**David C. BRASWELL, Plaintiff,**

v.

**Mitchell KOBELINSKI, Defendant.**

**Civ. A. No. 76–0635.**

United States District Court,
District of Columbia.

Dec. 22, 1976.

Ernest C. Baynard, III, Washington, D. C., for plaintiff.

David H. Shapiro, Sp. Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This is an action brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA" or "Act"), for alleged age discrimination in federal employment in violation of section 633a of the Act. Plaintiff alleges that he was denied a promotion on the basis of his age. He seeks retroactive promotion, back pay, adjustments in his retirement, sick leave, vacation and other benefits, compensatory damages for mental suffering,[1] injunctive relief against future discrimination, attorneys fees and costs. A trial to the Court in this matter was held on December 3, 1976. The Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, David C. Braswell, was born on July 20, 1926. Plaintiff is currently employed, and was employed at all times relevant to the instant action, as an attorney-advisor (general), GS–905–14, with the Office of Finance, Office of the General Coun-

---

1. On November 15, 1976, this Court dismissed plaintiff's claim for compensatory damages.

sel, Small Business Administration (hereinafter "SBA").

2. Defendant Mitchell Kobelinski is the Administrator of the SBA, an executive agency of the United States Government.

3. On January 27, 1976, the position of Chief Counsel for Administrative Law (hereinafter "CCAL"), Office of Interagency Affairs, Office of the General Counsel, SBA, became vacant when the then incumbent was transferred to another position. At all times relevant to the instant action, the CCAL position was classified as a GS-905-15 position.

4. On February 14, 1974, plaintiff was detailed to the Office of Interagency Affairs to give him the opportunity to work in some of the areas with which a CCAL would be concerned, to give the top management of the Office of General Counsel an opportunity to observe him performing functions in these areas, and to alleviate the workload problem in the Office of Interagency Affairs. Plaintiff remained on detail to the Office of Interagency Affairs until June of 1974. During this period, plaintiff was assigned duties which were both pertinent to the role of CCAL and necessitated by the workload of the Office of Interagency Affairs.

5. During this period in which plaintiff was on detail to the Office of Interagency Affairs and during the period of the selection process for a new CCAL, Mr. Donald W. Farrell was the Associate General Counsel of the SBA in charge of the Office of Interagency Affairs and Mr. H. Gregory Austin was the General Counsel of the SBA. The final decision as to the appointment of a new CCAL was made by Mr. Austin after consultation with other members of the top management of the Office of General Counsel, including Mr. Farrell.

6. In their search for a qualified candidate for the CCAL position, Mr. Austin and the other members of the top management in the Office of General Counsel initially considered only persons already employed by the Office of General Counsel, including Mr. Braswell. In mid-June of 1974, they determined that neither Mr. Braswell nor any of the candidates who had been considered for the position up until that time, all of whom were members of the staff of the Office of General Counsel, was qualified or desirable as a CCAL. At the time, they turned to personnel outside of the Office of General Counsel.

7. In late June and early July of 1974, Mr. Robert Peterson, who at that time was a GS-15 attorney with the Office of Minority Business, United States Department of Commerce, was being considered for the CCAL position. During this period, both Mr. Austin and Mr. Farrell interviewed Mr. Peterson. On the basis of these interviews, a review of Mr. Peterson's qualifications, and the strong recommendations of his superiors at the Department of Commerce, Mr. Austin determined that Mr. Peterson was highly qualified and desirable as a CCAL. Mr. Peterson was offered the position on July 18, 1974, and he was appointed to this position on August 18, 1974.

8. During their respective periods of consideration as candidates for the CCAL position, plaintiff was 48 years of age and Mr. Peterson was 40 years of age.

9. In considering each candidate for the position of CCAL, Mr. Austin and the other members of the top management in the Office of General Counsel considered each candidate individually as to his ability, knowledge, experience, and maturity, as compared to the level of ability considered necessary and desirable for a CCAL.

10. In determining whom to appoint to the position of CCAL and in considering each candidate for the position, Mr. Austin and the other members of the top management in the Office of General Counsel were looking for an attorney who had the knowledge, ability, experience and personality necessary to perform the duties of a CCAL, and if there was more than one such candidate, the candidate who was the most qualified. They were not seeking to make this appointment on the basis of the youth of the candidate.

11. It was the general policy of the Office of General Counsel to fill top positions,

such as the CCAL position, with senior attorneys already employed by the Office of General Counsel, if such an attorney was otherwise qualified. Several senior attorneys, including plaintiff, were considered for the CCAL position.

12. Age was not a factor in the decision not to appoint plaintiff to the vacant position of CCAL or in the decision to appoint Mr. Peterson to this position. Neither Mr. Austin or Mr. Farrell, nor any of the other officials of the Office of General Counsel, considered in any way the ages of the candidates for this position. Plaintiff introduced some evidence that age had been a factor in these decisions, but to the extent his witnesses were in conflict with the testimony of Messrs. Austin and Farrell, the Court finds the testimony of Messrs. Austin and Farrell more credible. Defendant introduced clear and convincing evidence through entirely credible witnesses that age was not in any way a factor either in the determination not to promote plaintiff or in the appointment of Mr. Peterson.

13. Plaintiff was not in fact qualified for the CCAL position, and he was eliminated from consideration for the position by Mr. Austin and the other members of the top management in the Office of General Counsel solely because he did not have the qualifications, experience or aptitude for the position. Mr. Farrell, who had an opportunity to review plaintiff's work while he was on detail to the Office of Interagency Affairs, determined that plaintiff's legal analyses and writing ability, and general experience, while adequate to perform the duties of a GS–14 attorney-advisor, were not adequate to perform the supervisory duties of the Chief Counsel for Administrative Law. Mr. Farrell also concluded, from observing plaintiff's performance, that plaintiff's personality, understanding and ability to get along with others were such that they impaired his ability to perform the duties required in the area of personnel law, which contemplates close personal dealings between the Chief Counsel for Administrative Law and the Office of Personnel of this agency. Upon independent re-

view of plaintiff's work, Mr. Austin also determined that plaintiff was not qualified for the position, although he performed adequately as an attorney-advisor, GS–14.

14. Mr. Peterson was qualified for the CCAL position, and he was selected for the position solely because Mr. Austin determined, upon the basis of personal interviews with Mr. Peterson, a review of his experience and qualifications, and the strong recommendations of Mr. Peterson's superiors at the Department of Commerce, that he was highly qualified for the position of CCAL at the SBA.

15. Mr. Peterson, prior to his appointment to the position of CCAL, had had extensive experience in federal personnel law and practices and administrative law. Mr. Braswell had had only minimal experience with federal personnel law and practices prior to being detailed to the Office of Interagency Affairs.

16. Even assuming *arguendo* that age was a factor in the decisions not to select plaintiff for the position and to select Mr. Peterson, which it was not, defendant has shown by clear and convincing evidence that plaintiff would not have been selected for the position absent any age differential. Defendant has shown by clear and convincing evidence that plaintiff was not qualified for this position in terms of his legal analysis ability, writing ability, personality, or experience and that someone who was not qualified for this position would not have been appointed to it. Defendant has also shown by clear and convincing evidence that Mr. Peterson was highly qualified for this position and that his qualifications for the position exceeded those of plaintiff.

17. Plaintiff did not show that these reasons with respect to the qualifications of Mr. Braswell and Mr. Peterson were only pretexts for age discrimination.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter under the Age Discrimination in Employment Act, as amended by the Fair

Labor Standards Act of 1974, 29 U.S.C. § 633a ("the Act").

2. The Act prohibits discrimination in employment on the basis of age. The Act's protection is limited to individuals, such as the plaintiff herein, whose ages fall within the range of 40–65 years.

■■■■ 3. In an ADEA case brought under section 633a of Title 29 of the United States Code, the plaintiff must make a *prima facie* showing of age discrimination. The burden then shifts to the employer to show that age was not a factor or that, even if age was a factor, the employee or applicant would not have gotten the position for a legitimate nondiscriminatory reason. The employer must prove its case by clear and convincing evidence. The employee then has the burden of showing that the employer's legitimate nondiscriminatory reasons are but a pretext. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Day v. Matthews*, 174 U.S.App.D.C. 231, 530 F.2d 1083 (1976); *Laugesen v. Anaconda Company*, 510 F.2d 307 (6th Cir. 1975). Although *McDonnell Douglas Corp. v. Green, supra* and *Day v. Matthews, supra*, were decided under Title VII of the Civil Rights Act of 1964, several courts have determined that precedent from Title VII cases is relevant by analogy in ADEA actions. *See, e. g., Laugesen v. Anaconda Company, supra; Schulz v. Hickock Manufacturing Co., Inc.*, 358 F.Supp. 1208 (N.D.Ga.1973).

4. The defendant having sustained his burden is entitled to judgment in his favor.